IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ST. VINCENT HOSPITAL,

        Plaintiff,

    vs.                                  No. CIV-04-1431 JC/RHS

NEW MEXICO PIPE TRADES HEALTH
& WELFARE TRUST FUND,

        Defendant.

and

BOARD OF TRUSTEES, NEW MEXICO PIPE TRADES
HEALTH & WELFARE, TRUST FUND,

        Third-Party Plaintiff,

vs.

ST. VINCENT HOSPITAL,

        Counter-Defendant,

and

TONY A. MARTINEZ, LIBBY R. MARTINEZ, and
TERESA MARTINEZ-CORTEZ, in her capacity
as Guardian Ad Litem for Libby R. Martinez,

        Third Party Defendants.

**AMENDED MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court upon Defendant New Mexico Pipe Trades

Health and Welfare Trust Fund's Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim, filed March 8, 2005 (*Doc*. 10).  Defendants move for dismissal on the grounds that Plaintiff did not exhaust their administrative remedies, and, therefore, this Court has no subject matter jurisdiction over the matter.  The Court has reviewed the Motion, the memoranda and exhibits submitted by the parties, and the relevant authorities.  The Court finds Defendant's Motion to be well-taken and it is **granted**.

There are also several other ancillary Motions before the Court in this opinion, which must necessarily be considered prior to, or in the resolution of, the Motion to Dismiss the First Amended Complaint.  These motions includes St. Vincent Hospital's Motion for Leave to File Second Amended Complaint; St. Vincent Hospital's Motion for Leave to File Surreply; and Pipe Trades Trust Fund's Motion for Summary Judgment.

### I.      Factual Background

Third-Party Defendant Libby Martinez was admitted to Plaintiff St. Vincent Hospital ("St. Vincent") for a scheduled routine hysterectomy on April 23, 2002.  Prior to being admitted, Ms. Martinez signed a form allowing St. Vincent to act in her stead as an assignee and collect on its health care claims from her group health plan provider, New Mexico Pipe Trades Health and Welfare Trust Fund ("Pipe Trades").  Following her surgery, Ms. Martinez was expected to remain in the hospital for several days.  Complications arose, however, and Ms. Martinez ended up remaining at St. Vincent from April 23 until October 3, 2002, before her family finally withdrew her from its care.  St. Vincent now seeks reimbursement for its claims from Pipe Trades.  St. Vincent initially submitted their claims on or about August 14, 2002, with subsequent claims filed over the next three months.  These claims amounted to a total of $728,180.77 for

hospital services rendered.  Pipe Trades did not respond to this submission of claims until a denial notice, or explanation of benefits letter ("EOB"), was sent on April 23, 2004.  This EOB denied all of St. Vincent's claims, but also explained how to appeal this decision.  St. Vincent did not appeal, and instead brought suit in federal court seeking the unpaid health insurance benefits, and attorney's fees, as the assignee of Ms. Martinez, pursuant to the Employee Retirement Security Income Act of 1974 ("ERISA"), 29 U.S.C. §§ 1101 et seq.

## II.     Procedural Background

St. Vincent filed its original complaint on December 27, 2004.  Briefing regarding a motion to dismiss this complaint was commenced on January 14, 2005, but halfway through this process, Plaintiff was given leave to file a First Amended Complaint.  The First Amended Complaint was filed on February 22, 2005.  The one major difference between the First Amended Complaint and the original complaint was that Count II was abandoned, as Defendant and Plaintiff agree it was preempted.  The Court received Notice of Completion of Briefing on a Motion to Dismiss the First Amended Complaint on April 13, 2005.  Since this time, many subsequent motions have been filed, and are still pending.  In the extended time between the filing of Plaintiff's  original complaint and the present, an additional complaint was filed by Third-Party Defendants on April 14, 2005.  The Third-Party Defendants have also filed in New Mexico state court against St. Vincent regarding their medical malpractice claim. This claim is apparently still pending resolution.  St. Vincent's federal case was transferred to Senior District Court Judge Conway on December 6, 2005.

## III.    Standard of Review

A complaint may be dismissed pursuant to Rule 12(b)(6) only if "it appears beyond doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In deciding a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded factual allegations as true (*See Albright v. Oliver*, 510 U.S. 266, 268 (1994)), and views them in the light most favorable to the nonmoving party. *Sutton,* 173 F.3d at 1236.

**IV.    Discussion**

    **A.    Motion for Leave to File Second Amended Complaint**

St. Vincent filed its First Amended Complaint on February 22, 2005. St. Vincent filed a Motion for leave to file a Second Amended Complaint on October 14, 2005, nearly eight months later. St. Vincent claims that the Second Amended Complaint will add allegations that Pipe Trades did not provide St. Vincent meaningful access to review procedures for the claim submitted on August 9, 2002, and will also add a new separate cause of action regarding a claim submitted to Pipe Trades on October 11, 2002. St. Vincent further alleges that some of the facts upon which the proposed amendments to the complaint are based were not disclosed to St. Vincent until Pipe Trades made their initial disclosures in this case.

Fed. R. Civ. P. 15 provides that leave to amend a complaint is within the judge's discretion and "shall be freely given when justice so requires." A proposal to amend a complaint may be denied if the facts upon which it was based were known to the movant and were not included in the original complaint, or the party had sufficient opportunity to present the claims and failed to do so. *See State Distributors, Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416

(10th Cir. 1984); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1495 (10th Cir. 1995).

        1.     New facts not heretofore disclosed

Pipe Trades claims that St. Vincent should not be allowed to file this amended complaint because everything relevant about the proposed changes was within St. Vincent's knowledge prior to filing the original Complaint.

St. Vincent claims that one of the most substantial changes to the Complaint would be the addition of a cause action pertaining to a claim submitted on October 11, 2002.  In its First Amended Complaint, St. Vincent only specifically recognized one claim submitted on August 9, 2002, but also acknowledged "subsequent claims ... made over the next three months."  This plural usage does not limit St. Vincent to only its August 9, 2002 filing, but also encompasses any later filings, such as the October 2002 claim.   Most importantly, St. Vincent knew or should have known that it had submitted a claim in October 2002 before the filing of its First Amended Complaint in March 2005.  This is not a fact that Pipe Trades could have only had knowledge of, or which St. Vincent could only have been made aware of during initial disclosures.

The two truly "new" pieces of information that St. Vincent claims were just revealed to it are 1) a March 16, 2004 letter to Pipe Trades from Ms. Martinez' attorney and 2) Pipe Trades physician reviews evaluating the treatment of Ms. Martinez' during her stay at St. Vincent.  While these specific pieces of information may not have been known to St. Vincent before it filed its First Amended Complaint, the complaint did allege that Pipe Trades was relying on information outside of its Board of Trustees and the claims submitted to make its EOB.  Discovery of specific facts which support a broader theory, already alleged, does not warrant the granting of an

amendment to a complaint, which has already been once amended.

        2.        Undue Delay

There was no summary judgment motion pending when this motion was initially filed, but there is one now, and discovery has already begun as well. Permitting this amendment to go forward, although St. Vincent protests otherwise, would mean that at least some processes would begin anew. Curiously, St. Vincent's rationale as to why the amendment should be granted, that it is so similar to the present complaint it would not make much of a difference, is one of the main reasons that the Court has chosen to deny the motion. All information presented in the proposed amendments and the pleadings of this motion seem repetitive and unlikely to have any use besides clogging up the machinations of this case even further.

While cases should not be terminated upon mere technicalities, it is also true that cases should not proceed interminably without actually getting to the merits. Here, the Court is ready to examine the First Amended Complaint for viability, which St. Vincent admits is not substantially different at all from their proposed Second Amended Complaint. The voluminous motions and pleadings still residing on the docket of this case urge that the Court deny this Motion to Amend. Therefore, St. Vincent Hospital's Motion for Leave to File Second Amended Complaint is denied.

    **B.**    **Motion to File Surreply**

St. Vincent filed a Motion for leave to file a surreply in support of its initial response to this Motion on January 31, 2006. St. Vincent suggests that the surreply would provide additional legal authority that it is excused from complying with the exhaustion requirement. Pipe Trades

wishes the Court deny the filing of the surreply on several grounds.

It is within the Court's discretion when deciding whether to deny or grant leave to file a surreply. *Green v. New Mexico*, 420 F.3d 1189, 1197 (10th Cir. 2005). *Green* further provided the framework, that:

> "Generally, the nonmoving party should be given an opportunity to respond to new material raised for the first time in the movant's reply. If the district court does not rely on the new material in reaching its decision, however, it does not abuse its discretion by precluding a surreply. Material, for purposes of this framework, includes both new evidence and new legal arguments." *Id*. (internal citations and quotations omitted).

In *Green*, no new information was found to be provided by the Reply, and so the district court was held to be within its discretion to deny the filing of the written surreply. *Id.*

Here, St. Vincent's Motion does not argue that Pipe Trades provided any new information in its Reply. Indeed, St. Vincent asserts only that it has new legal authority, not that it needs to rebut any new legal authority proffered by Pipe Trades. And, upon examination of the new legal authority offered, the Court finds it to be old and an example of something that could have been offered in St. Vincent's Response brief. Therefore, St. Vincent Hospital's Motion for Leave to File Surreply in Support of Response to Defendant's Motion to Dismiss First Amended Complaint is denied.

### C. Motion to Dismiss First Amended Complaint

St. Vincent's First Amended Complaint alleges one count against Pipe Trades. St. Vincent claims that Pipe Trades owes it the entirety of the claim submitted, as well as attorney's fees. Pipe Trades, on the other hand, alleges that St. Vincent did not exhaust its administrative remedies when submitting its claims, by essentially not complying with Pipe Trades' appeal

7

process. According to Pipe Trades' plan regulations, plan participants must comply with the administrative processes that are provided by the health services provider. The Tenth Circuit has held that exhaustion of administrative remedies is implicit in the understanding of an ERISA plan. *McGraw v. Prudential Ins. Co. of America*, 137 F.3d 1253, 1263 (10th Cir. 1998). Failure to comply with plan processes means that a plaintiff has failed to exhaust his administrative remedies and that suit in federal court is not appropriate. *See Makar v. Health Care Corp. of the Mid-Atlantic (Carefirst)*, 872 F.2d 80, 83 (4th Cir. 1989).

In the instant case, it is clear from Pipe Trade's policy and the EOB sent to St. Vincent that Pipe Trades considered the appropriate course of action when presented with the denial of a claim submitted is to appeal this decision. Much discussion resulted in the briefings about which version of the ERISA claim procedure regulation is applicable to this case. The relevant part of ERISA is Section 113, which provides in pertinent part:

> "every employee benefit plan shall-(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by a participant and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. §1133.

Regulations that allow administrators to comply with the intent of ERISA as written above have been promulgated. In its Complaint, St. Vincent identified 29 C.F.R. 2560.503-1 as the applicable controlling regulation, which in pertinent part would have extended the deadline for filing an appeal from 60 days to 180 days. Pipe Trades claims, however, that an older version of this regulation applies to the claims submitted, which would mean St. Vincent only had 60 days to

appeal the decision rendered. The Court finds this distinction immaterial, however, as St. Vincent never appealed the denial of their claims, even after the 60 day time period had passed. St. Vincent appears to concede this point in their response, by arguing that the regulation Pipe Trades has cited still gives St. Vincent a right to skip the administrative review process. Resp. at 1-2, 4. While St. Vincent appears to concede this point, it still claims that Pipe Trades did not comply with the regulations in effect for monitoring the substance of written notices of denial of benefits. This regulation indicates that each written notice must contain:

> (1) the specific reason or reasons for the denial; (2) specific reference to pertinent plan provisions on which the denial is based; (3) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and (4) appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review. 29 C.F.R. §2560.503-1(f).

Indeed, it does seem that the more relevant question before the Court appears to be whether St. Vincent can still proceed despite the fact that they did not appeal Pipe Trade's decision. Pipe Trades claims that the controlling federal regulation not only requires an appeal after an adverse EOB has been issued, but also allows a claimant who has never received an EOB to internally appeal with a higher-level decision maker, without waiting for an EOB to be issued. *See* 29 C.F.R. §§ 2560.503.1(e)(2); 2560.503.1(g).

St. Vincent responds to this alleged necessity of an appeal, by suggesting that it had legitimate excuses for proceeding in the manner in which they did. St. Vincent claims that 1) it did not have a duty to appeal under the applicable ERISA regulations; 2) it was denied meaningful access to the administrative process and 3) even if an appeal is considered mandatory in this case, St. Vincent was exempt because an appeal would have been futile.

### 1.     Duty to File an Appeal

St. Vincent claims that the lack of specifics in the EOB means that no duty was subsequently imposed on it to file an appeal within the deadline provided by the plan. St. Vincent cites to *Ross v. Diversified Ben. Plans, Inc.*, 881 F.Supp. 331 (N.D. Ill. 1995), for this assertion. According to St. Vincent, *Ross* stands for the proposition that an EOB with only conclusory statements will not trigger a time bar to appeal. The distinction between the instant case and *Ross*, however, is that an appeal was actually filed in *Ross*, which undercuts St. Vincent's argument that it had no duty to appeal in this case. Indeed, the real issue in *Ross* appears to be that although an appeal was filed, it was filed much later than the deadline that was given in the plan regulations. *Id*. at 333. The Court in Ross does acknowledge, however, that if the initial notice of a claim denial does not "substantially comply" with the pertinent ERISA regulations, the time bar for filing an appeal will be tolled. *Id*. at 333-34. Tolling the time bar, however, still means that an appeal could be necessary, it just excuses an appeal that is late, instead of standing for the proposition that there is not a duty to appeal whatsoever. Regardless, St. Vincent only provides one instance of how its EOB letter did not substantially comply with the regulations, but still gives no excuse as to why it never appealed the EOB decision.

The analogy that St. Vincent tries to make between its case and *Ross* is that no specific reasons were given for the denial of benefits. St. Vincent claims it was provided with only conclusory statements, which therefore, were not specific enough to satisfy the requirements of §1133. In *Ross*, however, the extent of the explanation given was what amounted to a one-line summary: "[t]his claim has since been determined to be pre-existing." *Id*. at 334.   This was not

the case here. Instead, the information provided in the EOB to St. Vincent clearly stated for a paragraph's length that St. Vincent had provided sub-standard care and that the claims were not medically necessary for that reason.

Regardless, even if the Court did find Pipe Trades' EOB to be conclusory, the Seventh Circuit, the circuit in which the *Ross* opinion resides, has held that there must only be "substantial compliance" with §1133, which means examining not only the initial notice, but also any other communication between the group plan and the beneficiary. *See Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685,694 (7th Cir. 1992). As *Halpin* makes clear, this is because the only purpose of substantial compliance with the regulations is so that courts have a sufficient enough record for which to review the cases before them. *Id.* In comparison, the only legal guidance that *Ross* establishes, is that an inadequate initial notice can toll the time bar on appealing the decision of the group plan. Here, St. Vincent never appealed, so it is almost irrelevant whether the EOB received was conclusory or not. St. Vincent has not claimed any other instance in which substantial compliance with the controlling ERISA statute has not been achieved. Therefore, St. Vincent is found to have no duty to appeal because of an inadequate EOB.

### 2. Meaningful Access to the Administrative Process

To support this argument, St. Vincent cites to yet another outside district court opinion for the theory that being denied meaningful access to the administrative process of claim procedures is an exception to the general exhaustion requirement. The case that St. Vincent cites to for an example of the denial of this meaningful access, however, is not comparable to the instant facts. In *Medical Center-West v. Cluett, Peabody & Co.*, 814 F.Supp. 1109 (N.D. Ga.

1993), a hospital who was acting in the stead of its patient tried to collect on claims submitted to a group health plan provider. *Id*. at 1110.  Once the claims were denied, the hospital attempted to appeal the group plan's decision.  Whether they actually appealed or not was the fact in dispute which allowed a denial of summary judgment to proceed.  *Id*. at 1111.  *Cluett* does recognize that denial of meaningful access to the review procedures is a reason not to appeal, although it categorizes this as not a separate reason like St. Vincent, but instead under the broader doctrine of futility.  *Id*.  Because Plaintiff has organized this argument separately in their brief, the Court will review it as such, but the Court would acknowledge that denial of meaningful access does not appear to be a separate argument from futility.

In any event, *Cluett* described examples of denial of meaningful access as: 1) the hospital not being told it actually had the right to appeal; 2) the group plan had not acted on an appeal that the patient had sent them for over a year and half; and 3) other than the denial notice for one claim, the hospital never received instruction about how to appeal the denial of their claims or any other denials.  *Id*.  The Court held that if these allegations were true, it would excuse the failure to exhaust administrative remedies.  *Id*.  These facts, however, are not in any way analogous to the instant case.  It was clearly delineated in the EOB sent to St. Vincent that it had the right to appeal the denial of the claims.  St. Vincent never appealed the decision, so it is irrelevant how long a group plan would wait to act on an appeal, as Pipe Trades was never given that chance.

Therefore, the argument that Pipe Trades denied St. Vincent meaningful access to the administrative process must fail because St. Vincent appears to be at least as responsible for not participating in the administrative process themselves by not appealing.

### 3.     **Futility of Exhaustion**

The Tenth Circuit does recognize that trying to exhaust the administrative remedies set forth by an insurance provider or a group plan can be a futile proposition.  "ERISA contains no explicit exhaustion requirement although we have observed 'exhaustion of administrative (i.e. company or plan-provided) remedies is an implicit prerequisite to seeking judicial relief." *McGraw*, 137 F.3d at 1263.  Complete exhaustion can be avoided, however, when administrative remedies would be futile.  *Id*.  The doctrine of futility has been fleshed out by the Seventh Circuit case of *Smith v. Blue Cross & Blue Shield United of Wisconsin*, 959 F.2d 655, 659-60 (7th Cir. 1992).  This case clearly states that, "[i]n order to come under the futility exception, the [plaintiff] must show that it is certain that [its] claim will be denied on appeal, not merely that [it] doubts that an appeal will result in a different decision."  *Id*.  The Tenth Circuit has also weighed in regarding the severity of the test for futility, and found that, "the futility exception is limited to those instances where resort to administrative remedies would be 'clearly useless'."  *McGraw*, 137 F.3d at 1264.

In *McGraw*, futility was found when a patient tried to navigate her insurance company's byzantine administrative review process.  *Id*.  The patient kept trying to appeal the decisions, although she kept receiving overlapping denials, and even though her doctors kept trying to communicate to the insurance company that her physical therapy was medically necessary.  *Id*.  The patient's insurance company did not look to any outside sources for interpreting its plan or guidelines, and it was apparently obvious that all of the patient's claims were going to be "rubber-stamped" when the patient finally decided to quit trying to engage in the appeals process.  *Id*.

This case demonstrates exactly how inapposite the facts which would make a futility argument plausible are from the ones before us.  St. Vincent does make specific claims of futility, however, and the Court will regard these assertions.

St. Vincent makes several allegations in its First Amended Complaint as to why an appeal would have been futile in this case, but only a few arguments remain under the doctrine of futility by the time St. Vincent reached its Response.  These reasons are (1) the insufficient detail of the written notice received; (2) the unfair burden shifting to St. Vincent of the written notice received; as well as (3) a scant argument about the appropriateness of the information involved in the administrative process.  The Court will examine each in turn.

   a.   Insufficient Detail of EOB

St. Vincent claims that Pipe Trades' EOB did not provide sufficient rationale as to why all of their 9,000 separate claims were rejected, and that because of this, St. Vincent could not be expected to appeal and essentially prove to Pipe Trades why each claim was legitimate in its own right.  This argument is substantially similar to the argument that St. Vincent had no duty to appeal, which was analyzed above, but the Court will take it on its face as a separate argument. St. Vincent acknowledges that Pipe Trades does provide some reasoning as to why the claims submitted were denied.  The relevant portion of the EOB in contention reads as follows:

> "the participants' attorney has informed the Plan that: (1) the participant disputes the charges and requests they not be paid; (2) the charges are for services that were not rendered in a professional manner; (3) the services were necessitated by the provider's sub-standard level of care and are therefore the provider's responsibility; (4) the charges are not reasonable and customary as defined in Article VIII and are excluded under Sec. 2.4 of the Plan Rules in effect on the dates claims were incurred because they were for sub-standard care; (5) the charges were not medically necessary as defined in Article VIII of the Plan Rules and are excluded under Sec. 2.3 of the Plan

14

>Rules in effect on the dates claims were incurred because they were for sub-standard care."

St. Vincent suggests that this is not specific enough to give any description of why each claim was denied, but instead claims that the EOB offers conclusions supporting the denials instead of specific reasoning. St. Vincent also argues that Pipe Trades tried to shift the burden to St. Vincent to prove each of its claims, and that St. Vincent could in no way know what reasoning Pipe Trades would need to approve each claim. St. Vincent cites to *Weaver v. Phoenix Home Life*, 990 F.2d 154 (4th Cir. 1993), for the theory that an unspecific EOB could provide the basis for ignoring an appeal process.

Pipe Trades claims that there is no regulation or case supporting the assertion that a separate EOB should have been issued for each of St. Vincent's claims. Indeed, Pipe Trades points out that if St. Vincent believed some items should have been approved, then those claims should have been appealed. Pipe Trades also cites to *Weaver*, to point out the differences between this case and the instant one. Unlike this case, an appeal of the partial denial of benefits happened in *Weaver*. *Id*. at 156. However, even after this appeal, the group plan or insurance company in question, refused to provide more specific reasons for the claim denial. *Id*. at 158. These facts are in marked contrast to the instant case, where the reasons for the denial appear to be rather specifically stated in the EOB, although they may not be to St. Vincent's liking.

Additionally, Pipe Trades cites to another Fourth Circuit case, *Brogan v. Holland*, 105 F.3d 158 (4th Cir. 1997), for the assertion that the reasons given by the group plan will be upheld if there is substantial compliance with the regulation's requirements of specific reasons. *Id*. at 165. Brogan defined substantial compliance as, "a statement of reasons that, under the

15

circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review." *Id.* (citation omitted).  In *Brogan*, a one paragraph statement of reasons was deemed sufficient enough to substantially comply with the regulations. *Id.* at 165-66.  If this was sufficient for a layperson like Brogan to determine why his claims were being denied, a sophisticated organization like St. Vincent surely received sufficient detail to understand that its claims were being denied because there were allegations of malpractice or substandard care being brought against it or its doctors.

Pipe Trades cites to yet another Fourth Circuit case where a determination that a hospital stay was not covered because it was not "medically necessary" was deemed sufficiently specific. *Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.*, 32 F.3d 120, 127 (4th Cir. 1994).  Even more enlightening to the Court, and helpful for analyzing a shifting-burden argument, *Shepard* also undercuts St. Vincent's argument that they should not have had to prove why their claims were necessary.  In *Sheperd*, not only did the claimant seek review for the allegedly scant denial notice, but also provided a letter from his physicians explaining why his treatment was medically necessary. *Id.* at 127.  In this vein, the Court finds that it would not be too prejudicial to St. Vincent to explain to Pipe Trades why its care was not substandard or was medically necessary. Although the Court can sympathize that the hospital may not have wanted to completely explain why or why not one of its doctors may have committed malpractice or used substandard care, this does not meant that Pipe Trades has somehow placed an onerous burden upon them.

Therefore, the EOB is found to be sufficiently detailed and does not give rise to avoiding an appeal in this case.

       c.  Appropriateness of Information Reviewed

  In its complaint, St. Vincent voices strenuous objection to the fact that Pipe Trades relied on the knowledge of their actual plan participant, Ms. Martinez, and her attorney, when issuing its EOB. In its response brief, however, St. Vincent no longer makes this such an issue. Pipe Trades contends, though, that federal regulations do not require or limit the sources of information that form the basis of the EOB. Mem. at 9. Pipe Trades further argues that the actual "meat" of the EOB, that is, the reasons why the claims were denied, were entirely appropriate. Further, Pipe Trades emphasizes that under ERISA regulations, it is entirely within the discretion and responsibility of the fund trustees to provide claim resolution. St. Vincent agrees with this assertion. Resp. at 12. This broad grant of responsibility implies that the fund trustees may rely on whatever sources they deem necessary. St. Vincent has not rebutted the appropriateness of this method of review. Therefore, the Court finds it is not a basis for declaring participation in the administrative process to be futile.

  The overarching problem with all of St. Vincent's aforementioned complaints about the nature of the EOB and the entire administrative process is that the remedy to resolving these problems was clearly outlined for them. If St. Vincent believed that the EOB was insufficient in detail or too reliant upon outside sources, the decision should have been appealed based on these considerations, or on the actual merits of each claim submitted. Regardless of the basis, the fact that St. Vincent did not appeal, means that under these facts, they are not allowed to use the federal court system as a remedy.

  Therefore, Defendant's Motion to Dismiss the First Amended Complaint is granted.

17

### D. Defendant's Motion for Summary Judgment

As the Court has granted Defendant's Motion to Dismiss the First Amended Complaint, consideration of Defendant's Motion for Summary Judgment is moot. Therefore, the Motion is denied as such.

WHEREFORE,

**IT IS ORDERED** that Defendant New Mexico Pipe Trades Health and Welfare Trust Fund's Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim, filed March 8, 2005 (*Doc*.10) is **GRANTED**;

**IT IS FURTHER ORDERED** that St. Vincent Hospital's Motion for Leave to File Second Amended Complaint, filed October 14, 2005 (*Doc*. 54) is **DENIED**;

**IT IS FURTHER ORDERED** that St. Vincent Hospital's Motion for Leave to File Surreply in Support of Response to Defendant's Motion to Dismiss First Amended Complaint, filed January 31, 2006 (*Doc*. 78) is **DENIED**;

**IT IS FINALLY ORDERED** that Pipe Trades Trust Fund's Motion for Summary Judgment on St. Vincent's First Amended Complaint and Supporting Memorandum, filed February 3, 2006 (*Doc*. 82) is rendered **MOOT** and **DENIED**.

DATED May 4, 2006.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiff:

    William P. Slattery, Esq.
    David B. Lawrenz, Esq.
    Simons & Slattery, L.L.P.
    Santa Fe, New Mexico

    M.J. Keefe, Esq.
    Gilpin & Keefe, P.C.

    Albuquerque, New Mexico


Counsel for Defendants:
    William G. Walker, Esq.
    Laure van Heijenoort, Esq.
    Albuquerque, New Mexico


Counsel for Third-Party Defendants:
    Mark L. Ish, Esq.
    Felker, Ish, Ritchie & Geer
    Santa Fe, New Mexcio